**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John DEVINE, Defendant-Appellant.**

**No. 84–3183.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1985.

Decided March 31, 1986.

Rehearing Denied May 6, 1986.

See also, 768 F.2d 210.

Edward M. Genson, Genson & Steinback, Jeffery Steinback, Levenfeld, Eisenberg, Janger, Glassberg, Genson & Lippitz, Chicago, Ill., for defendant-appellant.

Sheldon T. Zenner, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Defendant John J. Devine was convicted of knowingly and willfully devising and participating in a scheme to defraud in violation of 18 U.S.C. §§ 1341, 1951 and 1962(c). Judge Susan Getzendanner of the Northern District of Illinois sentenced him to numerous concurrent 15-year terms of imprisonment. For the reasons set forth below, we affirm.

■ Defendant, a former Cook County Associate Judge, was convicted of orchestrating deals with attorneys to fix cases for monetary payments. At trial two attorneys, Martin Schachter and Arthur Cirignani, testified they paid defendant to secure favorable results and to be "court-appointed" to represent defendants in future "deals." Devine usually requested one-third of the attorneys' fees for a fixed case. The attorneys usually secured their fees from clients' bond money. In addition to the testimony of the two attorneys mentioned above there was the testimony of F.B.I. agent/informant Terrence Hake who worked "undercover" in defendant's courtroom as part of the now famous Operation Greylord investigation. He verified defendant Devine accepted money from him. A third attorney, Howard Shaffner, testified he personally had an encounter with defendant and believed defendant was trying to "shake him down." Additionally, Chicago police officer Joseph Trunzo testified he witnessed an attorney named Harry Klepper leave defendant's courtroom upset one day because defendant demanded he be paid additional dollars to secure the result Klepper desired. We believe there is little need to detail other testimony at the trial. In sum, we find no paucity of evidence from which defendant could have been found guilty as charged.

■ Defendant claims reversible error occurred because the district court refused to allow a linguist, Dr. Robert Shuy, to testify concerning difficult to hear sections of a "body-bug" tape produced by F.B.I.

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

agent Hake. Hake produced such tapes while "dealing" with defendant and his courtroom personnel. Defendant claims that since the government was allowed to present transcripts of its version of the conversations to the jury, the exclusion of Dr. Shuy's testimony denied him his right to a fair trial and his Sixth Amendment right to present an adequate defense. Defendant adds Dr. Shuy's testimony was reliable and helpful and therefore should have been presented to the jury under Rule 702 of the Federal Rules of Evidence. We note that Dr. Shuy testified during defendant's offer of proof and stated, contrary to defendant's assertions, that if defense counsel were allowed to play the tapes to the jury and present its argument it would have the same effect as any transcripts given to them. The tapes were played. Shuy also rejected defendant's argument that he would be using his expertise in understanding the context and dynamics of conversations in analyzing the tape. Shuy claimed he would rely instead on auditory and phonetic indicia, i.e., listening skills. The district court concluded Shuy's testimony would "not have given the jury significant help in understanding the evidence or in determining a fact in issue, and understanding what is said in a tape recorded conversation is not outside the average person's understanding." (D.Ct.Op. of Dec.17, 1984 at 3) We agree. "We will reverse the court's ruling on the admissibility of expert testimony only upon a clear showing of abuse of discretion." *Spray-Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226, 1241 (7th Cir.1982) (See also *Contractor Utility Sales Co. v. Certain-Teed Corp.,* 748 F.2d 1151, 1155 (7th Cir.1984). We see no clear abuse of discretion here. We also reject defendant's argument he was unable to present his version of what the tapes said. Defendant's counsel cross-examined Agent Hake for three days. The tapes were played during this cross-examination on equipment identical to that used by Dr. Shuy. Portions of the tapes contested by defendant were deleted when given to the jury in transcript form during deliberations. We see no reversible error.

Defendant claims that the district court committed procedural error in disallowing the Shuy testimony because it ruled on independent grounds that defendant had failed to meet his burden under Fed.R. Crim.P. 16(b)(1)(B). This was because defendant failed to furnish the government with information concerning Dr. Shuy's review of the Hake tapes. The district court ruled Shuy's notes on the government's transcripts constituted reports under Fed. R.Crim.P. 16(b)(1)(B) and defendant had an obligation to produce the reports since they concerned a central issue in the case. Defendant further asserts the district court erred in excluding Dr. Shuy from the trial merely because he was in the courtroom during arguments about the admissibility of his testimony. Suffice it to say we believe there were adequate independent substantive grounds for excluding the Shuy testimony and therefore, assuming *arguendo* there was error in the procedural arena, it was harmless error.

■ Defendant claims the district court erred in refusing to allow defendant complete discovery concerning the entire scope of the "Operation Greylord" investigation of which Agent Hake's activities were a part. Defendant asserts, "It cannot be said that ... no set of facts could be proven upon which the Defendant would have been entitled to suppression of the tape recordings." (Defendant's br. p. 57) We note the propriety of the tactics employed in the "Operation Greylord" investigation was upheld in *United States v. Murphy,* 768 F.2d 1518, 1528–1529 (7th Cir.1985). Importantly, defendant was allowed discovery concerning cases which involved him. We see no error here.

■ *United States v. Murphy,* supra also eliminates two other arguments advanced by defendant. Defendant claims his conviction under the Hobbs Act (18 U.S.C. § 1951) should be reversed because his activities did not have a sufficient effect on interstate commerce. He also claims the mailing of bond refund checks to "insider attorneys" did not sufficiently advance the scheme to defraud as required

under the provisions of the Federal Mail Fraud Statute, 18 U.S.C. § 1341. Both these arguments were rejected in *Murphy.* (See 768 F.2d at 1530–1531 concerning the Hobbs Act issue and 768 F.2d at 1529–1530 concerning the mail fraud argument).

Defendant asserts the trial court erred in admitting the hearsay statements of Harold Conn and Harry Klepper. We believe it rather obvious from evidence independent of Conn's statements that Conn was a part of the conspiracy at issue in this case. We therefore find no error in admitting the Conn statements under Federal Rule of Evidence 801(d)(2)(E) as a statement of a co-conspirator. (See also *United States v. Gironda*, 758 F.2d 1201, 1217 (7th Cir.1985); *United States v. Jefferson*, 714 F.2d 689, 696 (7th Cir.1983)). The district court admitted the relevant Klepper statements through Officer Trunzo because they were not offered for the truth of the matter asserted, but instead to explain Trunzo's actions. We do not believe the admission of these statements amounts to reversible error in this case.

Defendant's final argument is that the district court erred in limiting his cross-examination of Agent Hake. Defendant particularly objects to his inability to ask Hake about the absence of confirming statements by Hake at certain times after Hake gave a co-conspirator bribe money. Hake, for obvious reasons, would try to document the giving a bribe whenever possible by making a confirming type of remark. Defendant claims, for example, he should have been able to ask Hake the question "When you left on February 3, did you say anything on that tape recorder about giving Judge Devine money?" (see defendant's br., p. 61). The district court found evidence of a lack of a confirming statement by Hake at any given time legally irrelevant, stating there may have been no opportunity for Hake to make any confirming statements in certain instances when giving bribe money for fear he would tip off the conspirators. We see no abuse of discretion on the part of the district court here. We note defendant was al-

lowed extensive cross-examination of Agent Hake over a three-day period which covered 650 pages of trial transcript.

We close by stating we leave this case with the impression that the evidence presented against defendant Devine at trial was very strong. Testimony from several reliable, credible and independent sources indicates defendant Devine was properly convicted of conduct so despicable we will not engage in a battle of adjectives in an attempt to describe it. The evidence speaks for itself.

One final caveat is appropriate. Defendant asked for and was mercifully granted leave to file an oversized brief by this court. The brief was desultory in nature; in general a poorly written product with numerous typographical errors. It was obviously never edited by a caring professional. As a panel of judges already overburdened with cases and paper, we find it insulting to have to dutifully comb through a brief which even its author found little reason to give such attention. We condemn this type of shoddy professionalism.

For the reasons set forth above, the decision of the district court is hereby AFFIRMED.