Kenneth L. SHEA, Plaintiff, Appellant,

v.

Peter TISCH, etc., Defendant, Appellee.

No. 88–1547.

United States Court of Appeals,
First Circuit.

Submitted Dec. 9, 1988.

Decided March 24, 1989.

Cornelius J. Sullivan, on brief, for appellant.

Eileen M. Hagerty, Asst. U.S. Atty., Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., and Lori Joan Dym, Office of Labor Law, U.S. Postal Service, Washington, D.C., on brief, for appellee.

Before COFFIN, BREYER and SELYA, Circuit Judges.

PER CURIAM.

Appellant Shea, who worked for the postal service for many years, brought an action against the defendant postmaster general contending he had been discriminated against because of his handicap. Defendant sought summary judgment for either of two independent reasons. First, defendant argued, plaintiff had failed to contact an Equal Employment Opportunity counselor within 30 days of the last alleged act of discrimination as required by 29 C.F.R. § 1613.214(a) (1986) and, second, defendant, as a matter of law, had made a reasonable accommodation of plaintiff's handicap. The court granted defendant's motion for summary judgment without indicating the basis for its ruling and without any statement of reasons.[1] Plaintiff has appealed. We review the record.

The verified complaint and appended materials, including affidavits and the Equal Employment Opportunity (EEO) case file, indicated that plaintiff, a disabled Vietnam veteran suffering from an anxiety disorder, was hired by the postal service in 1973. He had a good work record through 1981. Thereafter, Shea experienced medically related absences; in April 1985 the postal service attempted to separate him from service on the basis of disability. Plaintiff

---

1. The district court disserves itself, the parties, and the court of appeals when it takes so enigmatic a tack. We could, of course, simply vacate and remand for a proper explication of the lower court's rationale. In this instance, however, the record is adequate for us to reach the merits, and we elect to do so.

challenged that decision through the grievance procedure. Dr. Gammon, his clinical psychologist at a veteran's hospital, wrote letters explaining that plaintiff's anxiety was greatly increased by driving in heavy Boston traffic to his duty station, but that if plaintiff were reassigned to a post office within 10 to 15 miles of his Billerica home, his absenteeism would diminish.

The proposed separation was rescinded on December 24, 1985. As a result of negotiations between plaintiff's lawyer and postal officials in April 1986, plaintiff was temporarily assigned to the Stoneham Post Office for one bid cycle. Plaintiff understood that the Stoneham assignment was temporary and that he was supposed to bid on other assignments during the cycle in order to use his seniority rights to obtain a more permanent position near his home.

Positions within a 10 to 15 mile radius of plaintiff's home thereafter became available; plaintiff could have obtained them, given his seniority, but chose not to bid on any.[2] All of the openings, he said, failed to meet his medical needs. Plaintiff was warned that if he refused to bid he would end up being assigned to a less desirable left-over slot, and his stay in Stoneham was extended to three bid cycles, to give him more time to secure a permanent slot. On June 30, 1986, Dr. Gammon wrote a further letter stating that Shea felt that his manager at the Stoneham Post Office was putting a great deal of pressure on Shea to accept a bid. Dr. Gammon thought that for plaintiff to accept a bid which "increases the pressure on him, either by virtue of placing him on a late shift or a split time-off arrangement, [would be] seriously detrimental to his psychological well-being." While some of the jobs available to plaintiff, had he bid, were day shift jobs, they provided for split time off, that is, one weekend day off and one weekday off, rather than the entire weekend (which plaintiff preferred in order to have the same free days as his wife and to decrease the stress he experienced). After three bid cycles had passed without Shea having tendered any bids, he

was assigned to the Watertown Post Office on the 11:30 p.m. to 8:00 a.m. shift effective July 5, 1986. On Dr. Gammon's advice, plaintiff did not report for duty.

Although plaintiff had formerly worked in the Boston Management Sectional Center (MSC), his home was located in the Middlesex–Essex MSC. Some of the post offices most proximate to plaintiff's home were in one MSC and some in the other. On the advice of then acting labor relations manager, James Leahy, plaintiff applied in August 1986 to Charles Wilkinson, manager of employee relations in Middlesex–Essex, for a position at the Woburn mail facility. By letter dated September 29, 1986, Wilkinson turned down plaintiff's request, referring, among other things, to plaintiff's poor attendance record.

Plaintiff and his lawyer continued to meet with postal officials through October and November 1986 in an attempt to obtain a posting consistent with what plaintiff believed his medical needs to be. At a November 1986 meeting with William Evans, the manager of labor relations, plaintiff's attorney was informed that no further accommodation would be made.

### I.

We turn first to defendant's contention that plaintiff's action is barred because he did not timely comply with 29 C.F.R. § 1613.214(a). This section provides, in material part, as follows:

(a) *Time limits.* (1) An agency shall require that a complaint be submitted in writing by the complainant or representative and be signed by the complainant.... The agency may accept the complaint for processing ... only if:

(i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him/her to believe he/she had been discriminated against within 30 calendar days of the date of the alleged discriminatory event, the effective date

---

**2.** In particular, there was an opening for a window clerk working 9:30 a.m. to 6 p.m. with Sundays and Tuesdays off.

of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action....

Under 29 C.F.R. § 1613.214(a)(4), the agency "shall extend the time limits ... for ... reasons considered sufficient by the agency." In the present case, the agency determined that plaintiff's action was timely, and hence did not decide whether the circumstances would have warranted an extension under § 1613.214(a)(4).

Defendant contends that the last act of discrimination occurred no later than September 29, 1986 when Wilkinson, by letter, denied plaintiff's request for a transfer to the Middlesex–Essex MSC. Plaintiff did not contact an EEO counselor, however, until November 18, 1986, more than 30 days later. Defendant relies principally on *Goldman v. Sears, Roebuck & Company*, 607 F.2d 1014 (1st. Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980), contending that the final decision denying plaintiff's request for transfer to Middlesex–Essex was Wilkinson's September 29, 1986 letter and that any of plaintiff's actions taken thereafter were but requests for reconsideration which were inadequate to toll the 30 day limitation period.

Defendant's position is flawed, inasmuch as it assumes that plaintiff is complaining solely about (or is entitled to complain solely about) the denial of plaintiff's request to transfer to Middlesex–Essex. While certain documents read in isolation could give that impression, it would be unfair to read either plaintiff's administrative or judicial complaint as limited to the September 29, 1986 decision. Since at least April 1985 (when Shea received notice of the proposal to separate him on the basis of disability), Shea has complained about discrimination, and, represented by counsel, has been pursuing various avenues to obtain a posting compatible with what he says are his medical needs. One effort led to another, as one unbroken skein, at least until Evans' refusal of any further accommodation in November 1986. Within a matter of days thereafter, Shea's counsel wrote to the EEO counselor (on November 18, 1986) complaining of an "on-going policy of discrimination and failure ... to make reasonable accommodations...." The communique described perceived abuses over a several year period and asked that Shea immediately be assigned to a proper position.

Consequently, it was clear early on in the administrative proceedings that plaintiff was complaining not only about Wilkinson's September 29, 1986 decision not to accept him as a transferee to the Middlesex–Essex MSC, but also Evans' November 1986 refusal to assign plaintiff to a weekday position in the Boston MSC at a location within 15 miles of plaintiff's home. Evans' decision, as Shea justifiably saw it, was not simply a refusal to reconsider or undo Wilkinson's denial, but also a freestanding refusal to accommodate plaintiff within the Boston MSC. To come within the limitations period, plaintiff was not simply relying on refusals to reconsider decisions earlier made as in *Goldman*, but rather on a position communicated for the first time in November 1986, to wit, that no further action would be taken or accommodation made to place plaintiff in a weekend off position within 15 miles of his home.

We could go on, for several other items in the record point in the same direction, but we see no need to paint the lily. As a practical matter at the administrative level, the several incidents were broadly viewed as interrelated, were lumped together, and were treated as having been finally determined in November 1986, within the limitations period. Particularly in light of the fact that the agency had discretion to extend the filing limit, 29 C.F.R. § 1613.214(a)(4), but instead expressly concluded plaintiff's filing was timely, we would be on thin ice to hold, as appellee urges, that plaintiff's administrative filing was addressed only to Wilkinson's September 29, 1986 decision and that consequently plaintiff's action is now barred for failure to adhere to the § 1613.214(a)(1)(i) time limit. The suit was timely.

## II.

█ We turn, then, to the postal service's argument that it reasonably accom-

modated plaintiff's handicap. First, it is important to underline what defendant did not argue in moving for summary judgment on the reasonable accommodation issue. Defendant did not dispute plaintiff's contention, supported to some degree by Dr. Gammon's letters, that driving more than 15 miles, working a late night shift, and not being able to spend weekends with his wife were medically contraindicated in view of plaintiff's anxiety disorder. Nor did defendant claim that a position meeting all of plaintiff's requirements became vacant during plaintiff's temporary assignment to Stoneham. There was no evidence how long it might have taken before such a position would have become available. In other words, we do not know whether, for example, during a fourth cycle of temporary assignment to Stoneham, a suitable vacancy likely would have occurred or whether instead a considerably longer temporary assignment would have been necessary before the right opening arose. Rather, in moving for summary judgment, defendant argued that it could not have provided plaintiff with the job he desired because to do so would have violated the seniority provisions of the collective bargaining agreement between the service and the American Postal Workers Union. Under that agreement, defendant said, assignments must be bid for and then awarded on the basis of seniority. And defendant cited a number of cases for the proposition that an employer is not required to reassign a handicapped person to a different position, particularly if such a reassignment would violate other employees' rights under a collective bargaining agreement.

Below, plaintiff did not dispute defendant's summary or analysis of the collective bargaining agreement.[3] Indeed, plaintiff did not provide any real response to defendant's argument. Consequently, we must take it as established that to provide plaintiff with the accommodation plaintiff seeks—that is, permanent assignment to a day time, weekday position within 15 miles of his home without competitive bidding and irrespective of seniority—would violate the collective bargaining agreement.[4]

We find *Carter v. Tisch*, 822 F.2d 465 (4th Cir.1987), on which defendant relies, persuasive. In that case, a postal custodian was unable to perform his usual work because of asthma and sought assignment to a permanent light duty position. Reassignment was denied because there were no permanent light duty positions available in the maintenance craft to which plaintiff belonged and, even if there had been one available, plaintiff would not have been eligible for it as the collective bargaining contract required five years prior service, a requirement plaintiff had not met. Plaintiff was discharged.

The question before the court in *Carter* was whether a transfer of the type plaintiff requested was a reasonable accommodation the postal service was required to make. The court concluded it was not. First, the court noted that the Supreme Court had said in dicta that an employer was "not

**3.** Wilkinson's affidavit, styled as a "declaration," which limned the mechanics of the union pact, was filed on January 4, 1988, contemporaneously with defendant's motion for summary judgment and memorandum in support thereof. Plaintiff never objected to it or complained about its timing. More specifically, plaintiff neither moved to strike nor sought a continuance to file an opposing affidavit. Since the declaration was on file for some six weeks, unopposed, before the district court decided the motions for summary judgment, it seems fair to conclude that the facts contained therein are beyond cavil.

**4.** On appeal, plaintiff seems to be arguing that the collective bargaining agreement would not be a bar to assignment to an acceptable position in view of the fact that defendant was able to place plaintiff in Stoneham working the days and hours plaintiff wanted. The undisputed evidence in the administrative record, however, is that the Stoneham assignment was temporary. According to one affidavit, there was a full complement of workers at Stoneham and thus there was not even any opening in Stoneham for plaintiff to fill. Therefore, plaintiff was not taking a position any other worker was entitled to hold under the seniority provisions of the collective bargaining contract. Rather, a job was temporarily devised for plaintiff to allow him some breathing room to bid on a regular position. If plaintiff's argument now is that the postal service should have *created* a position for plaintiff on a long term basis, we will not consider it since it was not presented below.

required to find another job for an employee who is not qualified for the job he or she was doing," although he could not "deny an employee alternative employment opportunities reasonably available under the employer's existing policies." *School Board of Nassau County v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987). The Fourth Circuit read this dicta to mean that an employer is not required to find alternative employment unless he normally does so under his existing policies. In *Carter*, however, the plaintiff was not eligible under the employer's existing policies to obtain the transfer he wanted. The Fourth Circuit next surveyed the existing case law and found the overwhelming weight of authority to be against plaintiff's contention that reassignment was required as a reasonable accommodation. The court then concluded that even if there were a duty to reassign in some cases, "such a duty would not defeat the provisions of a collective bargaining agreement unless it could be shown that the agreement had the effect or the intent of discrimination." *Carter v. Tisch*, 822 F.2d at 469.

To be sure, plaintiff's situation is not identical to the plaintiff's in *Carter*. Unlike the plaintiff in *Carter*, Shea claims he would be capable of doing his usual duties were he able to get to work without being subject to undue stress which adversely affects his work ability. It is the location (and timing) of the duties—not the duties themselves—which pose the problem. But this difference, we think, is not a critical one. The fact remains—as in *Carter*—that plaintiff wants not the position at the East Boston Air Mail Facility he held when his anxiety disorder started to impose additional limitations, but a new position at a different location. To give plaintiff such a new position would violate the collective bargaining rights of other employees, thus drawing a compelling parallel to *Carter*. We see no need to repeat the Fourth Circuit's survey of the authorities, for we agree in general with that court's reading of the cases and its legal conclusions. Consequently, we, like the Fourth Circuit, conclude that the postal service was not re-

quired to accommodate plaintiff further by placing him in a different position since to do so would violate the rights of other employees under the collective bargaining agreement.

AFFIRMED.