**Reginald D. FEDRO, Plaintiff–Appellant,**

v.

**Janet RENO,[1] Attorney General of the United States, Defendant–Appellee.**

**No. 93–1489.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1993.

Decided April 1, 1994.

---

1. Janet Reno, the present Attorney General of the United States, has been substituted for her prede- cessor, William Barr, as defendant pursuant to the automatic provisions of Fed.R.App.P. 43(c).

Bruce M. Davey (argued), Lawton & Cates, Madison, WI, for plaintiff-appellant.

Christa A. Reisterer, Asst. U.S. Atty. (argued), Madison, WI, for defendant-appellee.

Before CUMMINGS and ROVNER, Circuit Judges, and GRANT, District Judge.[2]

GRANT, District Judge.

Plaintiff, Reginald Fedro, was employed in a GS–1811 position as a Criminal Investigator/Deputy Marshal for the United States Marshals Service when he contracted hepatitis-B through on the job contacts with an infected marshal, prisoner, and/or refugee. He was placed on disability status, and in February 1986 retired from the Service with full Workers' Compensation benefits. Mr. Fedro's condition subsequently improved, and in April 1989, he made a request for priority placement within the Department of Justice. When the Marshals Service failed to restore him to his original position or to place him in any of the alternative positions which he sought, Mr. Fedro filed suit under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, alleging that he had been the victim of handicap discrimination. The jury ultimately returned a verdict for the defendant, and this appeal followed.

## I. BACKGROUND

Mr. Fedro addressed his request for priority placement to Harry Flickinger, an Assistant Attorney General, who in turn referred Fedro to the Personnel Officer for the Marshals Service, Kenneth Holecko. Holecko advised Mr. Fedro that before he could be

**2.** The Honorable Robert A. Grant, District Judge, United States District Court for the Northern District of Indiana, is sitting by designation.

considered for any available positions within the Department of Justice, the Department needed a complete medical report from his personal physician, Dr. John Morrissey.

Dr. Morrissey obliged by letter dated June 5, 1989, in which he stated:

It is my opinion that [Fedro] has a mild chronic hepatitis B ... This condition has not significantly affected his health over a period of many years and in my opinion is unlikely to significantly affect it in the future.

I have reviewed the qualifications for federal marshal and believe that from a physical standpoint he meets all the qualifications. *However, I believe he represents a risk to others should he be involved in an altercation which resulted in contamination of others with his blood.* With the limitation you have indicated I feel he is qualified to serve as a U.S. Marshal. *I would recommend he be assigned to duties where the likelihood of him being involved in a violent physical altercation is very low.* (Emphasis added).

Based on Dr. Morrissey's letter and his working knowledge of the demands of the job, Holecko concluded that Mr. Fedro could not be placed in a law enforcement job in which there would not be a likelihood of violent confrontation. He accordingly notified Mr. Fedro by letter dated July 5, 1989, that he had no right to restoration. Holecko advised Fedro, however, that the agency would make every effort to place him in a position for which he was qualified, and enclosed registration forms for the Department of Justice Priority Placement and Referral System Program.

Mr. Fedro indicated on the registration form that he would like to be placed in a full-time position at a GS–11 level as either a Criminal Investigator for the Office of Inspector General or a Criminal Investigator for the Federal Law Enforcement Training Center. Both are GS–1811 positions. He subsequently amended his request to include Washington, D.C. as one of his preferred locations, and to add a full-time GS–1810

General Investigator position to the list of positions for which he wished to be considered.[3]

Although Mr. Fedro was placed on the priority placement list for all full-time 1810 and 1811 positions at numerous locations, no offers were forthcoming. The Department contends that the GS–1811 positions which became available while Mr. Fedro was on the list were not offered to him because Holecko had previously determined that physical confrontation was likely to occur in those positions and that Mr. Fedro posed an unacceptable risk of infecting others with hepatitis-B should he be involved in such a confrontation. It contends that it did not place Mr. Fedro in a full-time GS–1810 General Investigator position because under its existing staffing policies all 1810 positions were being staffed with part-time employees, were located in Arlington, Virginia, and had an entry grade level below GS–11. The Department did, however, ultimately offer Mr. Fedro a part-time 1810 job. Its offer was rejected.

Mr. Fedro did not agree with Holecko's decision, and registered a complaint with his Congressman, who, in turn, directed Mr. Fedro's complaint and a copy of Dr. Morrissey's letter to Raleigh Neville, a Program Manager for the Office of Personnel Management ("OPM"). In that capacity, Mr. Neville oversees a number of programs focusing on federal employee benefits, including the restoration rights of people who have been injured on the job. Mr. Neville responded to the Congressman's inquiry by letter dated July 14, 1991, in which he wrote:

[T]he only issue here, is can Mr. Fedro safely and efficiently perform the essential duties of his job? The answer appears to be yes ...

—In our view, the likelihood of a U.S. Marshal being involved in an altercation in which there was an exchange of blood is practically nil ...

—Testing positive for hepatitis is not, by itself, disqualifying under the medical standard for U.S. Marshal positions.

\* \* \* \* \* \*

---

3. The GS–1810 General Investigator positions involved internal background investigation. The Department does not dispute the fact that the

requirements of the job pose little threat of a "violent confrontation" which could pose a health threat to others.

—The fact that the Justice Department enrolled Mr. Fedro under its reemployment priority list (RPL) for law enforcement officer positions suggests that he should be considered fully recovered. An employee is not eligible for the RPL if he has residual disabilities that would be considered disqualifying.

Although Neville authored the letter, it was signed by Edward McHugh, Chief of the Staffing Policy Division. More than a year later, Phil Spottswood, another OPM employee, contacted three physicians regarding the risk Mr. Fedro's condition might pose to others. Mr. Spottswood prepared written summaries of his conversation with the physicians in which he reported that all agreed that the risk of infecting other individuals as a result of a physical confrontation was slight.

Mr. Fedro filed suit against the Marshals Service and the Department of Justice in April 1992, seeking among other things reinstatement to a GS–1811 position or placement in a full-time 1810 position.[4] He contends that he is qualified for both positions despite his disability; that the risk of infecting others with hepatitis-B is "nil"; and, that the Department was therefore required as a matter of law under the Rehabilitation Act to place him in the first available 1811 position or, alternatively, to "restructure" the existing 1810 positions to accommodate his request for full-time employment at a GS–11 salary grade level.

In support of his claim, Mr. Fedro sought to introduce at trial Raleigh Neville's testimony regarding Fedro's eligibility for an 1811 position, the medical opinions obtained by Mr. Spottswood, and the testimony of Kay McWhirter, a classification specialist for the Marshals Service, and Steven Weigert, a vocational expert, concerning the feasibility of combining two part-time 1810 positions into one full-time position. The district court concluded that Mr. Neville was not an expert within the meaning of Fed.R.Evid. 702 and that Mr. Spottswood's summations of the medical opinions offered by others was inadmissible hearsay, and accordingly granted

the defendant's pretrial motion to exclude that evidence. The court also denied Mr. Fedro's request to compel production of information pertaining to the availability of 1810 positions. In its order of December 9, 1992, the court stated:

> The Court is of the opinion that the 1810 positions are not full time and that the plaintiff is pursuing full time employment. His novel argument that the government should be required to combine several part time positions to reach a full time position does not persuade the Court that this is the relief which is envisioned by that cause of actions pursued by plaintiff.

The district court excluded the testimony of Mr. Weigert and Ms. McWhirter on similar grounds.

## II. DISCUSSION

### A. *The 1810 Positions*

 Mr. Fedro asks this court to determine as a matter of law whether the Rehabilitation Act and its implementing regulations impose upon employers a duty to find a new position for employees who are no longer able to perform the essential functions of their job due to a handicap. The district court held that it did not, and we agree.

The Rehabilitation Act requires federal employers to make "affirmative efforts to overcome the disabilities caused by handicaps." *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). Federal agencies are thus required to "give full consideration to hiring, placement, and advancement of *qualified* mentally and physically handicapped persons ..." 29 C.F.R. § 1613.703. In furtherance of that policy federal regulations require that:

> (a) An agency shall make reasonable accommodation *to the known physical or mental limitation* of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

4. Fedro subsequently amended his complaint to name William Barr, the United States Attorney General and head of the Department of Justice, as the sole defendant.

*(b) Reasonable accommodation may include, but shall not be limited to:* (1) Making facilities readily accessible to and usable by handicapped persons, and (2) *job restructuring, part-time or modified work schedules,* acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions....

29 C.F.R. § 1613.704. (Emphasis added).

Mr. Fedro contends that the Marshals Service was required as a matter of "reasonable accommodation" under § 1613.704(b) not only to place him in a different position (the 1810 position), but to modify its staffing policies to create a new position by "restructuring" two of its existing positions. It was not.

When Mr. Fedro's request for placement in a full-time 1810 position was denied, the law provided that "reasonable accommodation" generally *did not* include transfer or reassignment to a different position when an employee was no longer capable of performing the essential functions of his or her old job.[5] *See School Board of Nassau County v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987) ("[employers] are not required to find another job for an employee who is not qualified for the job he or she is doing"); *Bradley v. University of Texas M.D. Anderson Cancer Center,* 3 F.3d 922, 925 (5th Cir.1993), *cert. de-*

nied, —— U.S. ——, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994); *Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir.1993); *Bates v. Long Island R. Co.,* 997 F.2d 1028, 1035–36 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993); *Guillot v. Garrett,* 970 F.2d 1320, 1326–27 (4th Cir.1992); *Shea v. Tisch,* 870 F.2d 786, 789–90 (1st Cir.1989); *Lyles v. Dept. of the Army,* 864 F.2d 1581, 1583 (Fed.Cir.1989). While the Supreme Court noted in *Arline* that employers "cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policy," *Arline,* 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19, the Rehabilitation Act has never been interpreted to require an employer to *create* alternative employment opportunities for a handicapped employee, or to mandate preferential treatment of an employee simply because he is handicapped.

It does, however, require an employer to grant a request for accommodation where the accommodation in question is reasonable and makes it possible for handicapped employees to (1) perform the essential functions of the job in question, *Arline,* 480 U.S. at 289, 107 S.Ct. at 1131 n. 19; *Bradley,* 3 F.3d at 925; *Bates,* 997 F.2d at 1035–36; *Shea,* 870 F.2d at 789–90; *Lyles,* 864 F.2d at 1583, (2) pursue therapy or treatment for their handicap, *Buckingham,* 998 F.2d at 740, or (3) enjoy the privileges and benefits of employment equal to those enjoyed by non-

---

5. The law has since changed. 29 C.F.R. § 1613.-704 was superseded by 29 C.F.R. § 1614.203, which became effective October 31, 1992, and which provides in pertinent part:

> (g) *Reassignment.* When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and at the same grade or level, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program. In the absence of a position at the same grade or level, an offer of reassignment to a vacant position at the highest available grade or level below the employee's current grade or level shall be required, but availability of such a vacancy shall not

affect the employee's entitlement, if any, to disability retirement pursuant to 5 U.S.C. 8337 or 5 U.S.C. 8451....

Had § 1614.203 been in effect at the time the adverse decision was made in Mr. Fedro's case, it would not have required the Marshals Service to reassign Mr. Fedro to a full-time 1810 position. That position did not exist under the Service's existing employment policies, and the part-time positions which were available were not in the same commuting area and were significantly below the GS–11 grade level Mr. Fedro had previously held. While § 1614.203(g) may require reassignment to a *vacant* lower level position when a position at the employee's previous grade or level is unavailable, it does not require reassignment to a position that does not exist. The Marshals Service offered Mr. Fedro the only position that was available under its existing policies, a part-time 1810 position in Arlington, Virginia. While Mr. Fedro understandably rejected that offer, we do not read § 1614.203(g) to require more.

handicapped employees. *Buckingham,* 998 F.2d. at 740; *McWright v. Alexander,* 982 F.2d 222, 227 (7th Cir.1992). Under certain circumstances, reasonable accommodation may even include a requirement that an employer alter existing policies or procedures that it would not change for nonhandicapped employees. *See Buckingham,* 998 F.2d at 740; *McWright,* 982 F.2d at 227. In each of these cases, however, one factor remained constant: the requested accommodation *was related to the individual's handicap.*

Modifying a work schedule to allow an employee to work part-time instead of full-time or to work different hours serves the purpose of the Act if the modification makes it possible for the employee to perform a job that he or she would otherwise be incapable of doing because of a handicap. The reverse, however, is not true. Changing a part-time job (or two part-time jobs) into a full-time job does nothing to accommodate Mr. Fedro's handicap, and would not provide any privilege or benefit of employment which other non-handicapped employees were receiving. The accommodation which Mr. Fedro seeks would merely provide him with an earning potential greater than that afforded non-handicapped employees.

Mr. Fedro's application for placement in an alternative position sought reassignment to a full-time 1810 position at a GS–11 salary level. No such positions existed under the Marshals Service existing employment policies. Although the Marshals Service was not required to consider him for positions for which he did not apply, *see Dexler v. Carlin,* 1986 WL 6476 (D.Conn. Mar. 20, 1986), it offered Mr. Fedro the only 1810 position that was available, a part-time position in Arlington, Virginia. Mr. Fedro rejected that offer. The Rehabilitation Act requires nothing more.

Whether Mr. Fedro's request may have been "feasible," as both Mr. Weigert and Ms. McWhirter were prepared to testify, was not seriously disputed. That it may have proven a better use of the taxpayer's money to pay Mr. Fedro for work actually performed rather than paying continued disability benefits under the Workers' Compensation Program also seems fairly apparent. We are not in a

position, however, to dictate how the government might better spend its money. We hold simply that the Rehabilitation Act did not require the Marshals Service to create an employment opportunity for Mr. Fedro.

### B. *The 1811 Positions*

Whether Mr. Fedro was qualified for a GS–1811 Criminal Investigator position was a question of fact for the jury to decide. It found that he was not. Mr. Fedro contends that the result may have been different had Mr. Neville been allowed to testify and had he been allowed to introduce Mr. Spottswood's summations of medical opinions offered by the three physicians whom he contacted. A district court's evidentiary rulings, however, are accorded a great deal of discretion, *INB Banking Co. v. Iron Peddlers, Inc.,* 993 F.2d 1291, 1293 (7th Cir.1993), particularly in the case of expert testimony, and "will generally not be disturbed unless it is manifestly erroneous." *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *see also Hamling v. United States,* 418 U.S. 87, 108, 94 S.Ct. 2887, 2902–03, 41 L.Ed.2d 590 (1974); *Cella v. United States,* 998 F.2d 418, 422–23 (7th Cir.1993); *Federal Trade Commission v. Amy Travel Service, Inc.,* 875 F.2d 564, 572 (7th Cir.), *cert. denied,* 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989). We find no abuse of discretion in the present case.

29 C.F.R. § 1613.702(f) defines a "qualified handicapped person" as:

> a handicapped person who, with or without reasonable accommodation, can perform the essential functions of the position in question *without endangering the health and safety of the individual or others* and who ... [m]eets the experience and/or education requirements of the position in question.

Mr. Fedro contends that he can perform the essential functions of a GS–1811 position despite his handicap and without endangering himself or others, and that Mr. Neville's testimony would have proven that he was medically qualified for such a position. He contends that Neville was familiar with the medical standards applied by the Marshals

Service, that it was part of his job at OPM to investigate an agency's refusal to hire an individual for medical reasons and to issue an opinion on behalf of OPM, and that he therefore qualified as an expert. The district court disagreed, and we concur with the court's reasoning.

Mr. Neville lacked the superior knowledge, skill, experience, and education necessary to render a medical opinion as to the risks posed by hepatitis-B. His opinion was premised on Dr. Morrissey's letter and the medical standards for federal marshals, both of which were before the jury. His testimony would therefore have been of little or no assistance. Under the circumstances, Mr. Neville would not qualify as an "expert" within the meaning of Fed.R.Evid. 702, see United States v. Devine, 787 F.2d 1086, 1088 (7th Cir.), cert. denied, 479 U.S. 848, 107 S.Ct. 170, 93 L.Ed.2d 107 (1986); United States v. Lundy, 809 F.2d 392, 395 (7th Cir. 1987), nor could he be considered a "party-opponent" under Fed.R.Evid. 801(d)(2), as Mr. Fedro suggests.

■ Mr. Fedro's objections to the district court's exclusion of the medical opinions recorded by Mr. Spottswood are similarly without merit. There were several means available by which Mr. Fedro could have introduced medical evidence relating to his disease. He chose not to avail himself of those avenues, but rather attempted to fill the void with the unsworn statements obtained by Mr. Spottswood on behalf of the OPM. The district court correctly held those statements to be inadmissible hearsay.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

ROVNER, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's holding as to the 1811 positions. I am concerned about the government's reliance on Dr. Morrissey's letter to establish that Mr. Fedro posed a danger to others (see R. 146 at 31, 51–52, 54, 60, 62), given Dr. Morrissey's subsequent testimony qualifying the opinion set forth in his letter. R. 145 at 19–21, 24. The government's failure to present expert testimony of its own on this point is all the more troubling in view of the apparent position of the Office of Personnel Management and the physicians it consulted that any risk of infection Mr. Fedro posed to others was slight. R. 81 at 26–29, 33.[1] I agree nonetheless that Mr. Fedro failed to establish an appropriate evidentiary basis for the admission of Mr. Neville's testimony on this point, and without it the record is not so one-sided that we may disturb the jury's verdict.

I cannot, however, join the majority in holding as a matter of law that the government had no duty to find a new position for an employee who, like Mr. Fedro, became unable to perform the essential functions of his former position due to a disability. Given the broad obligations imposed on federal employers by the terms of the Rehabilitation Act as well as the implementing regulations, I believe it was incumbent upon the Marshal's Service to at least consider reassigning Mr. Fedro to a different position as a reasonable accommodation.

The majority proceeds from the premise that "[w]hen Mr. Fedro's request for placement in a full-time 1810 position was denied, the law provided that 'reasonable accommodation' generally did not include transfer or reassignment to a different position when an employee was no longer capable of performing the essential functions of his or her old job." Ante at 1395 (emphasis in original). The majority cites School Bd. of Nassau County v. Arline, 480 U.S. 273, 289 n. 19, 107

1. See Mantolete v. Bolger, 767 F.2d 1416, 1423 (9th Cir.1985), which explains that the determination of whether the employment of a disabled individual would pose an unacceptable risk of harm requires the employer to "gather all relevant information regarding the applicant's work history and medical history, and independently

assess both the probability and severity of potential injury." The court went on to caution that "[t]he application of this standard requires a strong factual foundation in order to establish that an applicant's handicap precludes safe employment." Id. (emphasis supplied); see also id. at 1425 (concurring opinion).

S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987), as support for this proposition, together with a number of appellate decisions which have construed *Arline* similarly. *Ante* at 1395. *Arline* did state in dicta that "[employers] are not required to find another job for an employee who is not qualified for the job he or she was doing...." 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19. But I believe it incorrect to extract from *Arline* a rule that federal employers need not consider reassignment to a different position. The plaintiff in *Arline* was a state employee who filed suit under section 504 of the Rehabilitation Act, a provision that is noticeably lacking in the affirmative obligations imposed on federal employers. *See Southeastern Community College v. Davis,* 442 U.S. 397, 410–11, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). In contrast, Mr. Fedro is a federal employee who has sued under a separate section of the Act that affords him substantially greater rights.

Under section 501 of the Rehabilitation Act, federal agencies owe their disabled employees more than a simple duty of nondiscrimination; they bear an affirmative obligation to meet the special needs of disabled employees and thus to broaden their employment opportunities. *See* 29 U.S.C. § 791(b); *Davis,* 442 U.S. at 410–11, 99 S.Ct. at 2369; *Overton v. Reilly,* 977 F.2d 1190, 1194, 1196 (7th Cir.1992); *Hall v. United States Postal Service,* 857 F.2d 1073, 1077, 1080 (6th Cir. 1988); *Mantolete v. Bolger,* 767 F.2d 1416, 1422 (9th Cir.1985); *Gardner v. Morris,* 752 F.2d 1271, 1277–78, 1280 (8th Cir.1985); *Shirey v. Devine,* 670 F.2d 1188, 1201 (D.C.Cir. 1982); *Prewitt v. United States Postal Ser-*

vice, 662 F.2d 292, 301–02, 306 (5th Cir.1981). Indeed, Congress expected the federal government to "become a model employer of handicapped individuals." 29 C.F.R. § 1613.-703 (1989).[2] Noting the greater burden that section 501 imposes on federal employers, the Supreme Court has recognized that, in contrast to other employers, federal agencies may be required to make changes that are "substantial" or that require "fundamental alteration" in order to accommodate the disabled. *Alexander v. Choate,* 469 U.S. 287, 300 n. 20, 105 S.Ct. 712, 720 n. 20, 83 L.Ed.2d 661 (1985) (quoting *Davis,* 442 U.S. at 410, 411 n. 10, 413, 99 S.Ct. 2369, 2369–70 n. 10, 2370).[3] We must therefore take care to avoid rote application of the cases interpreting section 504 when it is a federal agency rather than a state or private employer being sued. *See* Kathryn W. Tate, *The Federal Employer's Duties Under the Rehabilitation Act: Does Reasonable Accommodation or Affirmative Action Include Reassignment?,* 67 Texas L.Rev. 781, 800–02, 836 (1989); *see also* Jeffrey O. Cooper, *Overcoming Barriers to Employment: The Meaning of Reasonable Accommodation and Undue Hardship in the Americans With Disabilities Act,* 139 U.Pa.L.Rev. 1423, 1438–40 (1991).

In view of the broad mandate federal employers have been given to set an example in the employment of disabled individuals, the majority's narrow construction of what constitutes a reasonable accommodation is unwarranted. The regulation in effect at the time Mr. Fedro sought re-employment provided that "[r]easonable accommodation may include, but shall not be limited to: ... (2)

**2.** *See also* 124 Cong.Rec. 30347 (Sept. 20, 1978) (statement of Sen. Cranston) ("The legislative history of ... section 501 illustrates that with respect to the employment of handicapped individuals, Congress expected [that] the Federal Government should be a leader.").

**3.** In keeping with the government's unique obligation to the disabled, section 505(a)(1) of the Rehabilitation Act authorizes a court to "fashion[ ] an equitable or affirmative action remedy[,] ... tak[ing] into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy." 29 U.S.C. § 794a(a)(1). *See* Kathryn W. Tate, *The*

*Federal Employer's Duties Under the Rehabilitation Act: Does Reasonable Accommodation or Affirmative Action Include Reassignment?,* 67 Texas L.Rev. 781, 812–13 (1989) ("The statute invites a court considering a remedy to choose from among various options and allows it to use the cost of accommodation as one component in that choice. The statute does not direct a court to deny a remedy simply because the court views accommodation as too costly. By calling for 'an equitable and appropriate remedy' at one point and for 'an equitable or affirmative action remedy' at another, section 505(a)(1) anticipates that a court will sometimes need to search for a remedy beyond mere accommodation.") (footnotes omitted).

[j]ob restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions." 29 C.F.R. § 1613.-704(b) (1989). As the majority acknowledges, the regulation has since been modified to expressly include reassignment within its scope. *Ante* at 1395, n. 5.[4] But nothing in the prior regulation rules out reassignment to a different position; indeed, that option is in perfect company with the alternatives of restructuring and part-time work that are expressly mentioned in that regulation. As the Equal Employment Opportunity Commission has pointed out, "It may well be the case that reassignment is eminently more reasonable and less onerous from an agency's perspective than job restructuring or any other action that is specifically listed in § 1613.704(b)." *Ignacio v. United States Postal Service,* Pet. No. 03840005, Fed.Equal Opportunity Rptr. ¶ 843159, at XII–84–264 (EEOC Sept. 4, 1984);[5] *see also Rhone v. United States Dep't of Army,* 665 F.Supp. 734, 744–45 (E.D.Mo.1987); Tate, *The Federal Employer's Duties Under the Rehabilitation Act,* 67 Texas L.Rev. at 820–21.

4. As the majority points out, under the new regulation, the requirement that an agency "shall offer to reassign the individual to a funded vacant position" extends only to positions "located in the same commuting area." *Ante* at 1395 n. 5. However, I am not as confident as the majority that this limitation would necessarily relieve the Marshal's Service of any obligation to consider Mr. Fedro for positions beyond the commuting area of his current residence in Wisconsin. *See id.*

The Marshal's Service has apparently considered Mr. Fedro for positions outside of his commuting area as a matter of routine procedure (R. 146 at 9–10), and as the majority acknowledges, an employer " 'cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policy.' " *Ante* at 1395, quoting *Arline,* 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19. Thus, if an agency routinely considers reassignment opportunities beyond the immediate commuting area for employees who for any reason can no longer remain in their current job or location, then it would seem obligated to do the same for an employee who becomes disabled. Indeed, the commentary accompanying the new regulation makes clear

The majority's holding thus brings us into direct conflict with the EEOC, which, in construing the same version of the regulation that we apply today, held that reassignment *is* among the options that a federal employer must consider to accommodate a disabled employee:

> The Commission ... finds that the list provided in [§ 1613.704(b) ] includes the enumerated suggestions as illustrative "but shall not be limited" to this itemization. The Commission also finds the reasonable accommodation must be a logical adjustment made to a job and/or work environment that enables a qualified handicapped person to perform.... As such, the list of possible means of accommodation is infinite and can only be determined on a case-by-case basis.

Additionally, it is important to consider both the legislative history and Congressional mandates of the Rehabilitation Act on [f]ederal agencies. The legislative history of the Rehabilitation Act shows that Congress expected and fully intended that the [f]ederal government was to be a model employer of the handicapped, taking affirmative action to hire and promote the disabled. S.Rep. No. 93–318, 93d Cong., 2d Sess., at 49 (1973), U.S.Code Cong. & Admin.News 1973, p. 2076. *See also,* 29

that although an agency must actually reassign a disabled employee only when the conditions of the regulation are met, it bears an obligation to at least *consider* reassignment even when they are not. *See* 57 Fed.Reg. 12634, 12637–38 (1992). In other words, the agency's *absolute* duty to reassign the employee to a vacant funded position within the same commuting area does not rule out an obligation to reassign the employee to another position outside of that area, so long as it as reasonably feasible.

5. The decision of the EEOC was affirmed by a special panel of the Merit Systems Protection Board that was created to resolve disputes emanating from the overlapping jurisdictions of the EEOC and the MSPB. *Ignacio v. United States Postal Service,* 30 M.S.P.R. 471 (M.S.P.B. Special Panel 1986). *See* 5 U.S.C. § 7702(d)(6)(A). "Since the *Ignacio* special panel decision, the MSPB has regularly remanded cases for reconsideration of the availability of accommodation when the presiding official has not ascertained whether the employer has considered reassignment." Tate, *The Federal Employer's Duties Under the Rehabilitation Act,* 67 Texas L.Rev. at 841 n. 305 (collecting cases).

C.F.R. § 1613.703. The Rehabilitation Act requires all government agencies of the executive branch and the Postal Service to establish comprehensive affirmative action plans for hiring, *placing,* and advancing handicapped individuals. ([E]mphasis added). By the 1978 amendments to the Act, Congress made it clear that non-discrimination against the handicapped was an "obligation" on the part of the [f]ederal government, not a "gratuity." *Shirey v. Devine,* 670 F.2d 1188 (D.C.Cir.1982). . . .

Considering the construction of § 1613.-702(f) and § 1613.704(b), as well as the relevant legislative background and resulting case law, the Commission concludes that our regulations are to be read consistently and broadly with the intended purpose of providing equal opportunities for handicapped individuals. . . .

Reassignment as a means of reasonable accommodation is consistent with the case law. The Rehabilitation Act "impose[s] a duty upon federal agencies to structure their procedures and programs so as to ensure that handicapped individuals are afforded equal opportunity in both job assignment and promotion." *Ryan v. F.D.I.C.,* 565 F.2d 762 (D.C.Cir.1977). In another case, the same court found that the federal employer failed to make adequate affirmative *reassignment efforts* for a handicapped employee. *Doe v. Hampton,* 566 F.2d 265 (D.C.Cir.1977) (emphasis added). The obligation of the federal employer is not merely the employment of a handicapped person but an appropriate placement of such an employee. In other words, the federal employer has a continuing obligation to the handicapped employee after hiring him.

. . . [T]he Commission's decisions have [also] consistently held that reassignment is a means of reasonably accommodating handicapped individuals. To hold otherwise would be tantamount to excluding from consideration what might be the easiest, least costly, and most reasonable accommodation a federal employer could provide.

*Ignacio,* Fed.Equal Opportunity Rptr. ¶ 843159, at XII–4–264–65. *Accord Ellis v.*

*United States Postal Service,* 37 M.S.P.R. 503, 508–09 (M.S.P.B.1988). *See also* United States Office of Personnel Management, *Handbook on Reasonable Accommodation,* OPM Doc. 720–A, at 10 (March 1980) (listing reassignment and retraining as possibilities to be considered when an employee becomes disabled); *Rhone,* 665 F.Supp. at 743–44. Surprisingly, few courts have acknowledged the EEOC's position, and those that have done so have tended to pay it little heed. *See, e.g., Carter v. Tisch,* 822 F.2d 465, 468 (4th Cir.1987) (collecting cases); *Black v. Frank,* 730 F.Supp. 1087, 1091 (S.D.Ala. 1990); *Dancy v. Kline,* 639 F.Supp. 1076, 1079, 1080–81 (N.D.Ill.1986); *but see Coley v. Secretary of Army,* 689 F.Supp. 519, 522–23 (D.Md.1987); *Rhone,* 665 F.Supp. at 744–45. Yet, in view of the fact that the Commission is charged with enforcing both the regulation and section 501, its interpretation is entitled to substantial deference. *E.g., Arkansas v. Oklahoma,* —— U.S. ——, ——, 112 S.Ct. 1046, 1060, 117 L.Ed.2d 239 (1992); *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Hanson v. Espy,* 8 F.3d 469, 477 (7th Cir.1993).

I am also not persuaded that converting one or more of the part-time 1810 positions into a full-time position is an accommodation unrelated to Mr. Fedro's disability and thus beyond the relief available to him under the Rehabilitation Act. *See ante* at 1396. Certainly it is true, as the majority points out, that Mr. Fedro is *physically* capable of working part-time, and in that sense the creation of a full-time position is not in and of itself necessary to accommodate his disability. *Id.* But to whatever extent the majority's distinction between accommodations necessitated by the employee's disability and those due solely to the employee's personal preferences may be valid in other contexts, it should not be dispositive here. *Of course* Mr. Fedro wishes to work full-time. His former position was, after all, full-time; indeed, he would willingly return to that very position but for his employer's determination that his seropositivity for hepatitis-B poses too much of a risk to others. Naturally, in seeking reassignment, he prefers another full-time job. And "prefers" may be putting it too mildly. In the real world, few among us can afford to

work part-time; fewer still can afford to move half way across the country for a part-time position. Thus, it is understandable that Mr. Fedro turned down the one part-time 1810 position in Virginia that he was offered. Viewed in a practical context, his proposal to create a full-time 1810 position is simply an effort to find a position equivalent to the one he was forced to give up due to his disability.

Recalling once again the federal employer's affirmative obligation to expand the employment opportunities available to its disabled employees, I believe Mr. Fedro's request is in keeping with both the letter and the spirit of the Rehabilitation Act. The regulation (in both its prior and current form) identifies both job restructuring and the creation of part-time positions as examples of reasonable accommodation. 29 C.F.R. § 1613.704(b)(2) (1989); 29 C.F.R. § 1614.203(c)(2)(ii) (1993). Creating a full-time position from existing part-time positions is in keeping with these examples. No doubt there are significant ramifications to the creation of a full-time position, but are they different in kind from those which attend making a full-time position part-time (which in turn creates another part-time position that someone else must fill) or restructuring a particular position (which will require redistribution of job responsibilities among other employees)? The record does not in any way suggest that they are; on the contrary, what information we have about the proffered testimony of Mr. Weigert and Ms. McWhirter on this point suggests that there is no structural reason why the part-time 1810 positions could not be consolidated into a full-time slot, and that the Marshal's Service has simply never explored the feasibility of doing so. R. 60 at 10–11, 14, 23; R. 145 at 29.[6] Ultimately, we can only speculate on

that question, because the district court did not permit Mr. Fedro to take discovery or present evidence on this point.[7] I believe he should at least have been permitted that opportunity.

The unfortunate result of this case is that someone who is able and willing to return to work cannot. In refusing even to explore the possibility of fashioning a full-time position for Mr. Fedro from the existing part-time positions, the government has not, I fear, been the model employer of the disabled that the statute requires it to be. Nor am I sure that we have done justice to the aspirations of the Rehabilitation Act in relieving the government of any obligation to consider this possibility and precluding Mr. Fedro from attempting to prove its feasibility. *See* Tate, *The Federal Employer's Duties Under the Rehabilitation Act,* 67 Texas L.Rev. at 808 ("[W]hen a court concludes that the plaintiff is not entitled to accommodation without requiring the employer to demonstrate how accommodation would impose an undue hardship on the agency, it is unclear whether it has accorded the plaintiff his rights under the Act.") (footnotes omitted); *see also id.* at 804–06. With respect, I must therefore dissent from this portion of the court's opinion.

---

6. Because all that Mr. Fedro proposes is to restructure the 1810 positions already in existence so as to create a full-time position, he is not asking his employer to invent a wholly new job just for him, a measure that I agree might exceed the government's obligations under the Rehabilitation Act. *See ante* at 1395; *Rhone,* 665 F.Supp. at 746 n. 22.

7. The district court suggested that the Marshal's Service may wish to staff all 1810 positions on a part-time basis in order to avoid an obligation to pay benefits that would accrue to full-time employees, thereby saving tax dollars. R. 145 at 31. The irony, of course, is that whatever it might cost the government to make an 1810 position full-time, it is almost certainly less than the worker's compensation benefits Mr. Fedro receives (seventy-five percent of his former salary) while he awaits reemployment. *See ante* at 1396.