Janice PERRY, Petitioner,

v.

DEPARTMENT OF the ARMY, Respondent.

No. 92–3438.

United States Court of Appeals, Federal Circuit.

May 11, 1993.

Neil C. Bonney, Neil C. Bonney & Associates, of Virginia Beach, VA, submitted for petitioner. Of counsel were M. Jefferson Euchler and Charles H. Allenberg.

Brad Fagg, Commercial Litigation Branch, Dept. of Justice, of Washington, DC, submitted for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Martha H. DeGraff, Asst. Director. Also on the brief was Captain Loriann Campanella, Dept. of The Army, of counsel.

Before NIES, Chief Judge, ARCHER and CLEVENGER, Circuit Judges.

ARCHER, Circuit Judge.

Janice Perry appeals from the decision of the Merit Systems Protection Board (MSPB or board) dismissing her petition to enforce a settlement agreement against the Department of the Army. *Perry v. Department of the Army,* 54 M.S.P.R. 45 (MSPB 1992). We reverse and remand.

## I.

In 1989, the Army demoted Perry from her GS–5 position and she appealed that adverse action to the MSPB. In September 1989, Perry and the Army entered into an agreement settling the appeal and made it part of the official record. Accordingly, the MSPB dismissed the appeal but retained jurisdiction to ensure compliance with the settlement agreement. *See* 5 C.F.R. §§ 1201.-41(c)(2)(i), 1201.181–.183 (1992).

According to the agreement Perry was to continue in a GS–5 position for 120 days. She was then to suffer a demotion to a GS–4 position and after 10 months of satisfactory performance in that position, she would then be entitled to "one priority promotion consideration" for a GS–5 position. The pertinent portion of the agreement reads:

The agency agrees to grant [Perry] one priority promotion consideration to the position of Real Property Clerk, ... or any other Clerical or Secretarial, GS–5/10 position in the GS–300 series for which [Perry] qualifies, provided [Perry] completes satisfactory performance for a minimum period of ten (10) months from the date of the detail in the position and grade level of Clerk–Typist, GS–0322–04....

Pursuant to the agreement, the Army reinstated Perry to a GS–5 position for 120 days and then demoted her. At the end of 10 months, on July 28, 1990, the Army placed Perry on a "Priority Promotion Consideration Register." Almost six months later, on January 15, 1991, the Army Civilian Personnel Office referred Perry for a GS–5 position by placing her name alone on a DA Form 2600 (Referral and Selection Register), listing her as an exception to the merit selection procedures under "5D & FP Reg 690–11, App A, para 1a." [1] The personnel office submitted this form to a designated selecting supervisor. That same day, the selecting supervisor signed the form and returned it to the Civilian Personnel Office without selecting Perry for the position. The only notation he placed on the form was the statement "REQUEST AREA WIDE CONSIDERATION."

By letter dated April 18, 1991, the Army notified Perry that, three months earlier, she had been referred for a GS–5 position but had not been selected, and that the Army had fulfilled its obligations under the agreement to grant her one priority promotion

---

1. On September 28, 1990, Perry brought an enforcement action in the MSPB alleging that the Army had breached the agreement by (1) laterally reassigning her during her 10 month probationary period, and (2) failing to consider her for several positions which had become vacant after July 28, 1990. The MSPB denied the petition for enforcement. First, the MSPB found that the agreement did not preclude lateral transfers. Second, the MSPB found that the agreement required "special consideration ... for any vacant GS–300–5 position, for which [Perry] is qualified, that the agency fills by competitive promotion procedures. *See, e.g.,* 5 C.F.R. § 335.-103," and that either Perry was not qualified for any of the vacant positions or the Army filled the vacant positions by other than competitive procedures. The MSPB concluded that the Army had not breached the agreement and that Perry was still owed a priority promotion consideration. Perry did not appeal this decision.

consideration. The letter contained no explanation for the decision not to select her.

On May 6, 1991, Perry filed a petition with the MSPB for enforcement of the settlement agreement, alleging that the Army's referral of Perry for the position did not comply with the agreement because she was not given "priority promotion consideration." Perry argued, and the MSPB administrative judge (AJ) agreed, that the Army was required to produce evidence of a "justifiable reason for its failure to select" Perry. Because the Army offered no reason for not selecting Perry, the AJ recommended enforcing compliance. The Army petitioned for review of the AJ's decision to the board. The board held that Perry was required to prove that the Army did not comply with the agreement, citing *Fredendall v. Veterans Administration*, 38 M.S.P.R. 366 (MSPB 1988). The board then found that the agreement did not require the Army to explain its reasons for not selecting Perry, but only required that the Army consider Perry before considering anyone else. The board also found no evidence of bad faith because, among other things, there was "no evidence that the selecting official knew [Perry], was aware of either the disciplinary action against her or the settlement agreement, or had any other reason to act in bad faith (or in retaliation) with respect to her referral as a candidate for priority consideration." The board thus concluded that Perry failed to carry her burden of proof. This appeal followed.

## II.

This court's standard for reviewing a decision of the MSPB is established by statute. We will affirm a decision of the board unless it is

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (1988).

■ An agreement between an agency and a petitioner settling their dispute is a final and binding resolution of an appeal in the MSPB. 5 C.F.R. § 1201.41(c)(2) (1992). If the MSPB approves the settlement agreement and makes it part of the record, the MSPB "retain[s] jurisdiction to ensure compliance with the agreement." 5 C.F.R. § 1201.41(c)(2)(i). A party may then petition the board for enforcement of such a settlement agreement under 5 C.F.R. § 1201.182. *See Richardson v. Environmental Protection Agency*, 5 MSPB 289, 5 M.S.P.R. 248 (1981); *Fredendall v. Veterans Admin.*, 38 M.S.P.R. 366 (MSPB 1988).

■ When a party to a settlement agreement petitions for enforcement, the petitioner "must describe specifically the reasons the [petitioner] believes there is noncompliance" with the settlement agreement. 5 C.F.R. § 1201.182(a). The alleged noncomplying party must then file one of the following: (1) evidence of compliance; (2) evidence of compliance actions that have been taken, that are in process, and that remain, and a reasonable schedule for full compliance; or (3) a statement showing good cause for failure to comply completely. 5 C.F.R. § 1201.183(a)(1)(i)–(iii); *cf. Fredendall*, 38 M.S.P.R. at 371 (discussing burden of production when agency asserted to be in noncompliance). Thereafter the petitioner may respond to the alleged noncomplying party's submissions. 5 C.F.R. § 1201.183(a)(1).[2]

---

2. 5 C.F.R. § 1201.183(a)(1) provides in pertinent part:

(a) *Initial Processing.* (1) When a party has filed a petition for enforcement of a final decision, the alleged noncomplying party must file one of the following within 15 days of the date of service of the petition:

(i) Evidence of compliance, including a narrative explanation of the calculation of back pay and other benefits, and supporting documents;

(ii) Evidence as described in paragraph (a)(1)(i) of this section of the compliance actions that the party has completed, and a statement of the actions that are in process and the actions that remain to be taken, along with a reasonable schedule for full compliance; or

(iii) A statement showing good cause for the failure to comply completely with the decision of the Board.

The party that filed the petition may respond to that submission within 10 days after the date of service of the submission.

■ In this case the board placed on Perry the burden of proving the Army's noncompliance with the settlement agreement, citing the *Fredendall* case. There the board likened a petition for enforcement to an action for breach of contract, stating

> The courts have determined that a court-approved settlement agreement of the parties is subject to the general rules of construction and enforceability regarding contracts. An action to enforce a settlement agreement is analogous to an action for breach of contract. In the usual case, the burden of proof in an action for breach of contract rests on the plaintiff. The courts, thus, require the plaintiff in an action based on the alleged breach of a settlement agreement to prove that the defendant committed such breach.
>
> ... Therefore, the Board concludes that in a proceeding seeking the enforcement of a settlement agreement ... the burden rests on the party asserting that the settlement agreement has been breached to prove such noncompliance.

*Fredendall*, 38 M.S.P.R. at 371 (citations omitted). In relying on these contract principles, the board made no mention of the requirements placed upon a noncomplying party by its own regulations, 5 C.F.R. § 1201.183(a)(1)(i)-(iii). It recognized, however, the greater resources, expertise and access to disputed records of the agency and said:

> Thus, the board expects the agency in this case, and in all enforcement proceedings of a settlement agreement, to produce relevant, material, and credible evidence of its compliance with the agreement *upon the request of the appellant.* [Emphasis added.]

*Fredendall*, 38 M.S.P.R. at 371.

There is discernable tension between the board's regulations and its decision in *Fredendall.* The regulations at a minimum obligate the respondent (usually the agency) to produce in most cases "evidence of compliance" within 15 days after the filing of a petition that merely "describes specifically the reasons the petitioning party believes there is noncompliance." Yet *Fredendall* indicates that the petitioner must request agency records and evidence before they have to be produced. Read more expansively, the regulations place a greater burden on the respondent than on the petitioner, *i.e.*, to prove complete compliance or when and how complete compliance will be achieved and to do so with "narrative explanation ... and supporting documents," or to show good cause for noncompliance. Yet *Fredendall* expressly places the burden of proof on the petitioner.

Without deciding whether *Fredendall* is reconcilable with the board's regulations, a matter that we believe should be considered by the board in the first instance,[3] we conclude that it is sufficient to say in this case that both *Fredendall* and the regulations place a heavy burden of production on the agency. Here, the agency charged with failing to comply with the settlement agreement is wholly possessed of the evidence. It, therefore, has the duty of producing all of the evidence that it has to show that the provision of the agreement at issue has been satisfied.

As discussed *infra,* we are convinced that the agency has failed in this regard; it has not produced "all of the relevant material and credible evidence of its compliance" that was available to it. *Fredendall*, 38 M.S.P.R. at 371. Thus, the board legally erred in denying petitioner's claim on the basis that she failed to satisfy her ultimate burden of proof as required by the *Fredendall* case.

### III.

Essential to the question of compliance in this case is the construction of the term "priority promotion consideration" as used in the settlement agreement. The construction of this term in the agreement is a question of law that this court reviews *de novo. Greco v. Department of the Army,* 852 F.2d 558, 560 (Fed.Cir.1988); *Bonner v. Merit Sys. Protection Bd.,* 781 F.2d 202, 205 (Fed.Cir.1986). We must "determine the intent of the parties

---

3. In its analysis of proceedings brought under 5 C.F.R. § 1201.182, the board should also consider 5 C.F.R. § 1201.56(a)(1)(ii) (agency action may be sustained if "[i]t is brought under any other ... regulation and is supported by a preponderance of the evidence").

at the time they contracted, as evidenced by the contract itself." *Greco*, 852 F.2d at 560; *see Firestone Tire & Rubber Co. v. United States*, 444 F.2d 547, 551, 195 Ct.Cl. 21 (1971).

The board held and both parties agree that the term "priority promotion consideration" means generally "that an employee will receive *bona fide* consideration by the selecting official before any other candidate is referred for consideration and that the employee will not be considered in competition with other candidates and will not be compared with them." *Perry v. Department of the Army*, at 48 (quotations omitted) (citing *Loe v. Heckler*, 768 F.2d 409, 413 n. 3 (D.C.Cir.1985)); *see* Army Regulation 690–300, para. 1–5.c(7)(b) ("Priority consideration may be granted only once for each time proper consideration in a competitive promotion action was not given. It is important, therefore, that the candidate is given *a bona fide consideration* before consideration is given to candidates under competitive procedures." (emphasis added)).[4] The board also held and the parties agree that *bona fide* consideration does not require that the Army actually select the candidate.

Perry argues that the Army must explain its reasons for not selecting her in order for consideration to be *bona fide*. On the other hand, the Army argues that, under its regulations,[5] it need not give reasons for not selecting Perry. Moreover, it contends that *bona fide* consideration requires only that the Army refer a candidate for a position for which she is qualified prior to referring anyone else.[6]

Army Regulation 690–300, paragraph 1–5.c(8), expressly notes that the Army must give reasons for not selecting an applicant if consideration is given as a remedy for a discrimination complaint, while paragraph 1–5.c(7), governing other priority considerations such as the one involved here, is silent

in this respect. According to the Army, this means that it need not give reasons for not selecting an applicant. Also, paragraph 1–5.c(7)(b) provides that if the agency refers a candidate for a position for which she is not qualified, or for a position for which she is qualified but the agency subsequently does not fill that position, then consideration is *not bona fide*. The Army argues that the obverse of these provisions satisfies the *bona fide* consideration requirement; that is, that the Army need only make a priority referral for a position if the candidate is qualified and the position is later filled.

We are convinced that the meaning of *bona fide* priority promotion consideration lies between the extremes asserted by the Army and by Perry. In construing contracts, we assign to words their "ordinary and commonly accepted meaning unless it is shown that the parties intended otherwise." *Hol–Gar Mfg. Corp. v. United States*, 351 F.2d 972, 976, 169 Ct.Cl. 384 (1965). Thus, priority and *bona fide* consideration is consideration that precedes that of other candidates and that is "real, actual, genuine, and not feigned." *See* Black's Law Dictionary 160 (5th ed. 1979). Whether such consideration was given must be reviewed based on the totality of the circumstances. Perry's argument that the Army must offer an objective reasonable explanation for its failure to select her construes the agreement too strictly against the Army. Employment decisions often involve subjective factors, and we see no reason to require a statement of reasons, in the absence of a rule or regulation, such as is present in discrimination cases.

The Army's argument is that there is an inference or presumption of the required consideration from the mere fact of a noncompetitive referral. Such a rule would have the effect of reading the necessary *bona fide* consideration out of the settlement agreement's requirement. Therefore, we conclude that the agency must show not only that the

---

4. We also note that in the previous proceeding between the Army and Perry, the MSPB interpreted the agreement as assuring *"special* consideration ... for any vacant ... position[] for which [Perry] is qualified."

5. 5D & FP Reg. 690–11, app. A, para. 1a, b; Army Reg. 690–300, para. 1–5.c(7), (8).

6. The MSPB found, and the parties agree, that Perry was qualified for the vacant position, that the Army referred her for the vacant position before referring anyone else, and that the Army continued to try to fill the vacancy.

prior noncompetitive referral was made but also that the recipient supervisor who is charged with filling the position has actually considered and evaluated the applicant's qualifications.

## IV.

In deciding this case, the board assumed that the Army gave good faith consideration from the mere fact of referral; the board then found that Perry failed to prove bad faith or disingenuousness. However, as our prior analysis makes clear, the question is not whether Perry proved that the Army acted in bad faith, but rather whether the Army sufficiently showed that its selecting supervisor genuinely considered and evaluated Perry's qualifications.

The board found that the selecting supervisor did not know Perry personally, and there is no evidence that the supervisor interviewed or had any contact with Perry. The sole evidence produced by the Army of any consideration by the supervisor of Perry's referral is the completed DA 2600 referral form, stating "REQUEST AREA WIDE CONSIDERATION." The manner in which this form was filled out indicates a lack of attention by the supervisor to the referral instead of supporting a good faith consideration of Perry's qualifications.

We note first that the form mistakenly listed Perry as having been referred under 5D & FP Regulation 690–11, appendix A, paragraph 1a (special consideration as a result of discrimination), which the parties agree requires the selecting supervisor to give reasons for nonselection.[7] The selecting supervisor failed to follow the directions on the form and the requirements of the regulation applicable to a discrimination referral.

Moreover, the referral form, DA 2600, paragraph 6, requested the supervisor to fill out Part II of the form to indicate his selection (or presumably nonselection). The instructions on the form read, in part:

TO THE SELECTING SUPERVISOR [from the Civilian Personnel Office]: Persons listed below [*i.e.*, Perry] are best qualified among all eligible candidates for the position shown in Item 1. [Perry] was identified [by the Civilian Personnel Office] after thorough evaluation and comparison of [Perry's] qualifications against Office of Personnel Management standards and other job-related factors. You are requested to consider the attached data regarding [Perry] ... *and indicate your selection in Part II below.* Additional information will be furnished and arrangements for interviewing candidates will be made by [the Civilian Personnel Office] upon your request. [Emphasis added.]

The selecting supervisor also requested additional information not on Perry, as the instruction on the form said would be provided, but on other applicants. Again the supervisor did not follow the instructions for priority consideration. Further, the requested information on other candidates and the comparison of Perry against such other candidates would be an impermissible factor in priority consideration.

We therefore are unable to conclude that substantial evidence supports the board's decision that the Army complied with the settlement agreement. Indeed the limited evidence presented by the Army trends the other way, *viz.*, that Perry did not receive *bona fide* priority consideration from the selecting supervisor who received her referral. The decision of the MSPB is reversed and the case is remanded to ensure, consistent with this opinion, that the Army complies with the settlement agreement.

REVERSED and REMANDED.

---

7. Perry should have been referred under the correct paragraph 1b of the regulation (special consideration directed by higher authority). Because the MSPB found that the supervisor was not familiar with Perry's case, he could not have known of the mistake in the referral. The mistaken referral may in itself have been detrimental to Perry.