Edward James **FARRELL**, III, Plaintiff,

v.

Janet **RENO**, Attorney General of the United States, Defendant.

No. 95–187–CIV–FTM–17D.

United States District Court,
M.D. Florida,
Fort Myers Division.

Oct. 27, 1997.

Edward James Farrell, III, Lehigh Acres, FL, pro se.

Margaret O. Steinbeck, U.S. Attorney's Office, M.D. Fla., Ft. Myers, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This cause is before the Court on Plaintiff's Motion for Summary Judgment (Dkt.51) and the Motion for Summary Judgment (Dkt.49) of Defendant Janet Reno, Attorney General of the United States, Defendant's Memorandum of Law (Dkt.50), and the par-

ties' respective Responses in Opposition to Summary Judgment (Dkt.55, Dkt.56).

## I. Factual Background.

The facts are presented as stated in Plaintiff's Amended Complaint, Plaintiff's Motion for Summary Judgment, Defendant's Motion for Summary Judgment and all attached exhibits, which incorporate a substantial record from previous related matters heard by the Merit Systems Protection Board, the United States Court of Appeals for the Federal Circuit, and the final decision of a Department of Justice adjudication officer.

■ As a general rule, a court must read a pro se plaintiff's allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). In its consideration of this matter, this Court has endeavored to read all of Plaintiff's allegations and submissions of facts in as liberal a manner as is possible.

Plaintiff was employed by the United States Marshal Service (hereinafter "USMS") beginning in 1977. He eventually advanced to the position of Criminal Investigator (Deputy U.S. Marshal), which carries the USMS classification of GS–1811–11. Thereafter, Plaintiff became disabled with a back injury suffered on the job, and, on November 11, 1985, retired, electing to take disabled status. Plaintiff began to collect disability benefits and workman's compensation. At the time of his injury, Plaintiff lived and worked in the Madison, Wisconsin area. However, in April, 1986, Plaintiff sought reinstatement with the USMS, claiming that he had partially recovered from his injury. The USMS denied this request.

Plaintiff took no further action until May 12, 1988, when he filed a petition for appeal of the USMS decision not to reinstate him. *See Farrell v. Department of Justice*, 50 M.S.P.R. 504 (M.S.P.B.1991). Plaintiff's challenge alleged, *inter alia*, that Plaintiff had been involuntarily separated from his position by disability retirement, and that Plaintiff was partially recovered and, therefore, entitled to immediate restoration. *Id.* at 508. Although numbered differently prior to 1986, 5 C.F.R. Parts 353.302 and 353.304

require an agency to restore only fully recovered employees to service. *Id.* at 509. Consequently, the Merit Systems Protection Board (hereinafter "MSPB") administrative judge found that Plaintiff was not entitled to restoration. *Id.* However, the Board did find that the Department of Justice (hereinafter "DOJ") did not make every effort to restore the plaintiff to limited duty as an employee who was only partially recovered from an injury pursuant to 5 C.F.R. § 353.306 (1986). *Id.* The Board further held that Plaintiff was entitled to consideration for restoration to Criminal Investigator within the entire DOJ and within his local commuting area of Madison, Wisconsin, and appointment to a Reemployment Priority List (hereinafter "RPL") retroactive to his request.

5 C.F.R. § 330.201 (1986) governs all RPLs and provides:

"(A) The re-employment priority list (RPL) is the mechanism federal agencies use to give reemployment consideration to their former competitive service employees separated by reduction in force or fully recovered from a compensable injury after more than 1 year. The RPL is a required component of agency positive placement programs. In filling vacancies, the agency must give RPL registrants priority consideration over certain outside job applicants and, if it chooses, also may consider RPL registrants before considering internal candidates.

(B) Each agency is required to establish and maintain a reemployment priority list for each commuting area in which it separates eligible competitive service employees by reduction in force or when a former employee recovers from a compensable injury after more than 1 year.... For purposes of this subpart, agency means Executive agency as defined in 5 U.S.C. 105. All components of an agency within the commuting area utilize a single RPL and are responsible for giving priority consideration to the RPL registrants."

Accordingly, Plaintiff completed the required registration form for the USMS Priority Placement and Referral System (PPRS) on May 31, 1989. The PPRS was the USMS

version of the RPL.[1] On his registration form, Plaintiff designated Washington, D.C. as the location in which he was available for the positions of DOJ, GS–1811–11.

Subsequently, the DOJ/USMS filed a compliance report with the MSPB in regard to the MSPB decision requiring agency-wide consideration of the Plaintiff for reinstatement. The report stated that the DOJ had considered Plaintiff for restoration, department-wide within the local commuting area of Madison, Wisconsin, that no positions were available, and that, therefore, no award of back pay and benefits was appropriate. An administrative judge found that the DOJ appropriately used the period from May 1986, when the Plaintiff submitted his request for restoration, through May 1989. Both parties agree that Plaintiff was fully recovered from his compensable injury in May, 1989. On June 1, 1989, a medical examination conducted by a USMS doctor officially established that Plaintiff had fully recovered from his job-related back injury, and that with consideration of his age, Plaintiff was fit for the position of Criminal Investigator, as well as the U.S. Marshal positions. On June 26, 1989 the DOJ notified Plaintiff that his registration in the PPRS as a *fully* recovered employee had been accepted. Enclosed therewith was a DOJ memorandum explaining the workings of the PPRS.

Two days later on June 28, 1989, the DOJ offered Plaintiff the position of Deputy United States Marshal (Criminal Investigator), GS–1811–11, in Washington D.C. Plaintiff declined this offer, claiming that the GS–11 Criminal Investigator position was a demotion and alleging that his last position had been upgraded to a Grade 12 or 13, and communicated his fear of re-injuring himself. The DOJ, in response, explained to Plaintiff that the position was, in fact, equivalent to the one he had last held, and that if he did not accept the offer, he would be removed from the PPRS in accordance with applicable federal regulations.

Plaintiff never challenged the DOJ's compliance report and, it seems, abandoned his complaints based upon partial recovery. Instead, the record shows, Plaintiff asserted a new complaint alleging that the DOJ failed to consider him for placement as a *fully* recovered employee. On January 4, 1993, the MSPB sent Plaintiff's new claim to its Chicago regional office to be docketed as a separate appeal. *See Farrell v. Department of Justice,* 56 M.S.P.R. 188 (M.S.P.B.1993). The Chicago regional office docketed Plaintiff's appeal involving the restoration of rights of a fully recovered employee on January 13, 1993. However, on March 18, 1993, the parties, through their respective attorneys, executed a settlement agreement. An administrative law judge issued an initial decision on that same date accepting the agreement and dismissing the appeal.

Under paragraphs 1 through 3 of the settlement agreement, Plaintiff agreed to a final and binding resolution of all issues involving his putative restoration rights. An agreement between an agency and a petitioner settling their dispute is a final and binding resolution of an appeal in the MSPB. *See Perry v. Department of Army,* 992 F.2d 1575, 1577 (Fed.Cir.1993), (citing 5 C.F.R. § 1201.41(c)(2) (1992)). The agreement further set forth that the DOJ would place Plaintiff on the PPRS for a period of two years "or until such time that he is offered substantially equivalent employment to his former position with the USMS of Criminal Investigator (Enforcement), GS–1811–11." Plaintiff further agreed to comply with all terms of the PPRS.

On May 19, 1993, the DOJ sent Plaintiff a new PPRS registration form. Plaintiff completed the form and signed it on May 24, 1993. As required, he indicated his availability for the types of positions and series for which he was qualified and would accept referrals. These included GS–11 positions. Further, Plaintiff limited his geographical availability to the Fort Myers, Florida Commuting Area. By signing the PPRS registration form, Plaintiff certified his understanding that he would be removed from the PPRS should he have been offered a position for which he was registered and decline the offer.

---

**1.** The RPL replaced the PPRS on April 12, 1996.

Ten months later, on March 28, 1994, Plaintiff filed a petition for enforcement of the settlement agreement before the MSPB, stating that the DOJ had delayed to place him on the PPRS for over three months and that the DOJ had failed to offer him any position. In response, the DOJ established that any delay was inadvertent, and that there were, in fact, no positions of any kind available in Plaintiff's qualified areas in the Fort Myers geographical area during the period from March, 1993 to March 1994. Based upon the unrebutted evidence provided by the DOJ, the MSPB denied all of Plaintiff's claims, and thus, found no breach of the settlement agreement.

Subsequently, in a non-published opinion, the United States Court of Appeals for the Federal Circuit affirmed that decision. Therein, the Court of Appeals states that, "[i]t is indisputable that, in accordance with the settlement agreement, DOJ/USMS registered Mr. Farrell in the PPRS for a GS–1811–11 Criminal Investigator position in the Fort Myers geographical area. Moreover, the record contains uncontroverted evidence that DOJ/USMS representatives regularly checked for GS–11 Criminal Investigator vacancies in the Fort Myers geographical area and that no such vacancy arose during the relevant time period." Defendant supplies and cites this unpublished opinion in its Response in Opposition to Plaintiff's Motion for Summary Judgment.

The United States Court of Appeals also noted and adopted the MSPB holding that a vacant GM–13 supervisory position was not substantially equivalent to the Plaintiff's former GS–11 nonsupervisory position. Additionally, the PPRS did not apply to a position filled upon a non-competitive reassignment basis, as was the case with Plaintiff. Further, the Court of Appeals gave deference to the DOJ agency policy that provided that "lateral reassignments within bureaus ... are permitted [without regard to the PPRS]."

On April 26, 1994, roughly a month after Plaintiff filed his MSPB enforcement petition, and while that action was still pending, Plaintiff filed an employment discrimination complaint with the Equal Employment Opportunity (hereinafter "EEO") office of the USMS. Therein, Plaintiff alleged that the USMS had denied him employment in violation of the Rehabilitation Act, and that the USMS had failed to offer him a position from March 18, 1993, to the present because of his disability. He further alleged that this was in violation of the settlement agreement. The USMS's EEO office accepted and investigated the complaint. Thereafter, the EEO office remanded the case to the USMS for processing. A Department of Justice Adjudication Officer denied Plaintiff's claim for relief on May 5, 1995, finding that the record was insufficient to sustain his claims.

On March 7, 1995, Plaintiff expanded his geographical areas of consideration on the PPRS to include Fort Myers, Fort Lauderdale and Miami, Florida. On June 15, 1995, the DOJ informed Plaintiff that because his compensation benefits had been terminated by the Office of Worker's Compensation Programs on April 30, 1995, his eligibility on the PPRS list had been extended to April 30, 1997. Plaintiff continued to be considered in his chosen Florida locations until the PPRS was replaced by the RPL on April 12, 1996. President Clinton issued a memorandum requiring certain changes in how Executive Branch agencies develop career transition assistance. The result suspended the DOJ PPRS, and replaced it with the RPL. Under the RPL, a registrant can only be considered for the commuting area of the last position from which he or she had been separated. In this case, Plaintiff's last commuting area was Madison, Wisconsin. The DOJ informed Plaintiff of this change in writing.

Plaintiff filed the present action in the Middle District of Florida on May 30, 1995 as a pro se litigant. Plaintiff's one hundred six paragraph, nine count, Amended Complaint alleges that the Department of Justice United States Marshal Service discriminated against Plaintiff based upon his previous disability, and reprisal for his actions since 1986.

II. Analysis of Law and Conclusions of the Court

Plaintiff brings this action pursuant to Title VII and the Rehabilitation Act, and the

Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq., based upon Defendant's allegedly discriminatory refusal to offer Plaintiff a position as a GS–1811–11 or the equivalent. In his nine count complaint, Plaintiff seeks damages, front pay, back pay, reinstatement to the position held before his injury and election of disabled status, and for injunctive relief. Additionally, Plaintiff alleges that the DOJ engaged in retaliatory actions against him in reprisal for his appellate and EEO activities dating back to 1988. Both parties have moved for summary judgment.

## A. Standard of Review of Motions for Summary Judgment

Federal Rule of Civil Procedure 56 (hereinafter "Fed.R.Civ.P.") explains the prerequisites and conditions necessary for a court to entertain and rule on a motion for summary judgment.

Specifically, three parts of Rule 56, including parts (b), (c), and (e), are appropriate to the case at bar. Rule 56(b) grants the party against whom a claim is made the right to move, at any time, for a summary judgment in that party's favor. After the adverse party is given the opportunity to submit affidavits opposing the motion, Rule 56(c) instructs the court to grant the judgment sought by the motion "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510.

In opposing a motion for summary judgment that has been made and supported as provided in Rule 56, Rule 56(e) states that the adverse party:

"[m]ay not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

In addressing Rule 56, the Supreme Court, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), held that: "[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Id.* at 323, 106 S.Ct. at 2552–53 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Company v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). According to the plain language of Fed.R.Civ.P.

56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

B. The Prima Facie Case under the Americans with Disabilities Act.

For Plaintiff to establish a prima facie case under the Americans with Disabilities Act (hereinafter "ADA"), he must plead facts and bring forth evidence, not mere conclusory allegations a case that:

1. he is a qualified individual with a disability, as defined under the ADA;

2. he is qualified to perform the essential functions of employment with or without accommodation; and,

3. he suffers discrimination because of his disability.

Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... hiring...." The ADA defines disability with respect to an individual as follows:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or,

(C) being regarded as having such an impairment. 42 U.S.C. § 12102 (1993).

Furthermore, the statute defines a qualified individual as:

"an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual

holds or desires." 42 U.S.C. § 12111(8) (1993).

■ Because Plaintiff bears the burden of proving that he was discriminated against on the basis of a disability, perceived disability, or on account of his age, he must first establish a prima facie case of discrimination. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989). To do so, Plaintiff may rely on direct evidence of discriminatory intent, statistical evidence, or the four-pronged test set out in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.*, at 581; *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993).

■ Under *McDonnell Douglas*, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. This is accomplished by demonstrating:

(1) membership in a protected class;

(2) qualification for the position sought;

(3) rejection by the prospective employer; and,

(4) that the prospective employer hired a person outside of the protected class. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1532 n. 14 (11th Cir.1987). An overly strict formulation of the requirements of showing a prima facie case should be avoided. *Carter*, 870 F.2d at 583.

Once a plaintiff has established his prima facie case, the burden shifts to the defendant to produce some "legitimate nondiscriminatory reason" for the adverse employment decision. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). "Because the defendant need only produce, not prove, a nondiscriminatory reason, this burden is 'exceedingly light.'" *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995) (quoting, *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983)). Once the defendant has met his burden of production, the plaintiff must prove by a preponderance of the evidence that the employer had a discriminatory intent, and that the reason given for the adverse employment decision was merely pre-

textual. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

Plaintiff charges that "the inquiry here is whether there is evidence, given the record as a whole, that the USMS officials intentionally discriminated against Plaintiff on the basis of his disability, failed to accommodate his disability, or retaliated against him for engaging in protected EEO activity when they did not reinstate Plaintiff to a position as an Inspector Criminal Investigator or its equivalent elsewhere in the Department of Justice." However, the inquiry must be considered within the confines of established law and a search for a causal nexus between the facts and the elements of the cause of action.

■ Plaintiff alleges in his Motion for Summary Judgment that he is an individual with a disability as defined by the ADA. He bases this upon the fact that he "took disability retirement from the USMS because of his back problems." However, in so alleging, Plaintiff ignores that he considered himself fully recovered in 1989, as was confirmed by a USMS doctor. Throughout the period between April 1989 to 1996, the USMS and Plaintiff considered Plaintiff partially recovered. This is well documented and evidenced by the fact the USMS put Plaintiff on the RPL for consideration for reinstatement. Subsequently, the MSPB found that the Plaintiff was entitled to consideration for reemployment department-wide, that is, throughout the entire Department of Justice and within his commuting area of Madison Wisconsin.

The undisputed facts show that Plaintiff considered himself fully recovered, as did the USMS and DOJ as of June 1, 1989, based upon the USMS doctor's opinion. Indeed, the United States Court of Appeals for the Federal Circuit noted that both parties agreed to this fact. Prior to that date, while Plaintiff may have been disabled pursuant to the ADA, Plaintiff provides no evidence that Defendant did not act in accordance with established Federal Regulations and Administrative Courts' decisions with regard to disabled or injured employees. In fact, Defendant twice offered Plaintiff a GS–1811–11 position in Washington D.C. which Plaintiff turned down. Plaintiff cited as grounds for

the denial an allegation that the position was inferior to the one than he had originally held, and his fear that his age would limit his ability to properly perform. If anything, this demonstrates that the DOJ considered Plaintiff as fully recovered, and therefore not disabled. Further, Plaintiff offers no fact or evidentiary basis that demonstrates otherwise.

However, Plaintiff may be able to demonstrate a record of disability. Defendant admits that Plaintiff has a record of disability. Assuming, arguendo, that Plaintiff does qualify as disabled, he must then satisfy the *McDonnell Douglas* four-pronged test, absent a demonstration of direct evidence of discriminatory intent.

Defendant admits that Plaintiff is a member of a protected class, with the reservation that Plaintiff is not currently disabled. Additionally, there seems to be no factual dispute about whether or not Plaintiff was qualified for the position sought. Plaintiff does, however, dispute that he was qualified for positions he did not seek. The DOJ put Plaintiff on the PPRS/RPL three separate times. In each instance, Plaintiff, himself, applied for positions in the GS–11 series. While Plaintiff may believe that he is qualified for a higher level position, or that he would have been promoted to a higher position than he had when he was injured, he did not apply for positions higher than the GS–11 level.

■ The Federal Regulations that establish and define the Reemployment Priority List state that its purpose is to be "the mechanism agencies use to give reemployment consideration to their former competitive service employees separated by reduction in force or fully recovered from a compensable injury after one year." 5 C.F.R. § 330.201(a) (1993). In filling vacancies, the agency must give RPL registrants priority consideration over certain outside job applicants and *if it chooses* also *may* consider RPL registrants before considering internal candidates. (emphasis supplied) *Id.* While the *McDonnell Douglas* test requires that Plaintiff show rejection by the prospective employer, *Carter v. City of Miami*, *supra*, notes that the formula-

tion of the requirements of the test should not be overly strict. It is difficult to imagine, and Plaintiff has offered no legal basis, that the United States Supreme Court in *McDonnell Douglas* intended for the lack of offers to Plaintiff to act as a rejection by the prospective employer when the DOJ/USMS has been given significant autonomy in the administration of the RPL/PPRS. The RPL is the mechanism which the Federal Regulations has established to accommodate those in Plaintiff's position.

■ Plaintiff alleges that the prospective employer, the DOJ, filled the positions for which he applied with outside applicants, internal promotions, and lateral transfers. Assuming that it is true that outside applicants filled positions for which Plaintiff was eligible and registered for on the RPL/PPRS, then Plaintiff must also show that there was a discriminatory intent or reasoning used by the DOJ in these employment actions. Plaintiff has done neither. Plaintiff has made allegations that positions have been filled in the GS–1811–11 throughout the DOJ, but none specifically for which he was in direct competition. Again, Plaintiff limited his possibilities on the RPL/PPRS to specific geographical areas, and a specific class of jobs. This was Plaintiff's choice. Plaintiff cannot simply allege that the DOJ has discriminated against him because he has not been offered a position in a GS–11 series classification in twelve years, when Plaintiff chose to significantly limit the geographical areas of consideration, and in fact turned down such a position in Washington D.C. resulting in Plaintiff's removal from the PPRS/RPL. Further, simply alleging that Plaintiff may have been qualified for a higher position is pure speculation and cannot be made part of a reasoned analysis of the *McDonnell Douglas* test. However, assuming that Plaintiff could demonstrate all four elements, then Defendant must produce some legitimate nondiscriminatory reason for the adverse employment decision.

Defendant argues that there was no adverse employment decision at all. Defendant has produced evidence of two MSPB decisions and opinions, a non-published opinion of the United States Court of Appeal for the Federal Circuit, and the final decision of a DOJ Adjudication Officer. Essentially, the MSPB held in 1991 that Plaintiff was not entitled to immediate reemployment, but was entitled to consideration for reemployment in a limited capacity throughout the Department of Justice and in the Madison, Wisconsin commuting area. This demonstrates to this Court that at the time of that decision, the DOJ/USMS was acting within the Federal Regulations. Plaintiff has offered no facts that demonstrate discriminatory intent during that period. Later, in 1993, the MSPB held that the DOJ/USMS compliance report demonstrated that the award of back pay and benefits was not warranted because there were no positions available in the Plaintiff's commuting area for the relevant period up to and including March, 1993. These decisions, together, establish that the DOJ acted in compliance with the federal regulations governing reemployment of a partially recovered employee and with court orders.

Plaintiff claims the DOJ acted in contravention of the settlement agreement between him and the DOJ. At the time, Plaintiff had been placed on the PPRS for the third time, and had limited his geographical area of availability to the Fort Myers, Florida commuting area. The United States Court of Appeals for the Federal Circuit specifically found that the DOJ did, in fact, act in accord with the settlement agreement. Furthermore, the Court of Appeals found that the record contains "uncontroverted evidence" that DOJ/USMS representatives regularly checked for GS–11 Criminal Investigator vacancies in the relevant geographical area, and that no such vacancy arose during the relevant time period. That time period was March, 1993 to March, 1994.

■ This Court gives deference to the above court decisions and holds that collateral estoppel applies to preclude relitigation of the issues contained therein. The doctrine of collateral estoppel has four prerequisites to its application:

(1) the issues at stake must be identical to the one involved in the prior litigation;

(2) the issues must have been actually litigated in the prior suit;

(3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and,

(4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *I.A. Durbin, Inc. v. Jefferson National Bank,* 793 F.2d 1541, 1549 (11th Cir.1986).

Specifically, these decisions hold that the DOJ has acted in accord with applicable federal regulations with respect to the administration of the RPL/PPRS as it relates to Plaintiff. Additionally, Defendant did not act in contravention to the 1993 settlement agreement between the parties up to and including March, 1994. Furthermore, these prior decisions indicate the that there were no positions available for the time period and limited geographical areas to which Plaintiff applied, and that the GS–11 position is the applicable and correct classification to be afforded Plaintiff.

Therefore, given the requirements of *Haines v. Kerner,* and assuming, arguendo, that Plaintiff has demonstrated a prima facie case, then Plaintiff must show some fact in dispute that is evidence of discriminatory intent or action on the part of the DOJ in some other manner for the period up to and including March, 1994. Plaintiff has not done so. Defendant has produced a nondiscriminatory reason for not offering Plaintiff a position given the "exceedingly light" burden established by *Perryman,* 698 F.2d at 1142.

Still, Plaintiff makes several allegations, some contradictory, that if material and substantive would affect a possible ruling of summary judgment against him. Plaintiff alleges that the Stipulation Agreement was in effect well after the United States Court of Appeals for the Federal Circuit decision, and that the Defendant could have and did violate the agreement. However, Plaintiff does not specifically describe how the DOJ violated it.

Plaintiff further alleges that he was denied access to positions and Federal Career Opportunity listings "as exhibited by plaintiff's exhibits of letters and faxes requesting positions as well as phone call requests." However, Plaintiff does not specifically state if and how he was entitled to access to these "positions and Federal Career Opportunity listings." Additionally, Plaintiff alleges that "[n]othing prevented Defendant from allowing Plaintiff access to career opportunity listings, and to advise plaintiff where positions were located and when they were available." However, Plaintiff does not allege why he and Defendant should not be bound by clear federal regulations governing the PPRS/RPL and Plaintiff's own choices to limit the areas of consideration.

As support for his allegation that Defendant's denial that Plaintiff could be considered for certain positions with a promotion potential to a GS–12 level was discriminatory and retaliatory, Plaintiff claims that he *could* have reached such a level. Plaintiff refers to a letter written by Raleigh M. Neville of the Office of Personnel Management to a Mr. Hordon H. Evono. It seems that Mr. Evono's Deputy U.S. Marshal position had been upgraded from a GS–9 to GS–12 during the time in which he had been injured, and that this entitled him to consideration for GS–12 positions. However, Plaintiff does not offer any similar type of fact that pertains to his specific situation. He does not offer any specific fact that would allow the Court to determine that his GS–1811–11 position has been upgraded at any time since his injury. Mere allegations and beliefs are not sufficient to preclude summary judgment. Many of the allegations made by Plaintiff are either incognizable incomplete sentences or simply irrelevant.

Defendant has demonstrated that there have been no positions available in the limited geographical areas and in the specific GS–11 level in which the Plaintiff has applied for on the PPRS and RPL. While Plaintiff alleges that there have been numerous positions available throughout the United States, Plaintiff does not allege that there have been jobs available in the specific geographical areas that he has applied for and been eligible for and been denied. Plaintiff does allege, however, that Defendant filled positions for Deputy U.S. Marshal and Criminal Investigators nationwide. However, these allegations do not specifically demonstrate an instance where the Plaintiff was eligible for the

position, and not given that position because of his alleged handicap.

■ Plaintiff also contends that the DOJ failed to accommodate his disability by not rehiring him. However, Defendant correctly points out that the Rehabilitation Act does not require the DOJ to create an employment opportunity for Plaintiff. *See Fedro v. Reno*, 21 F.3d 1391, 1396 (7th Cir.1994). In *Fedro*, the United States Court of Appeals for the Seventh Circuit decided the issue of whether the Rehabilitation Act and its implementing regulations impose upon federal employers a duty to find a new position for employees who are no longer able to perform the essential functions of their job due to handicap. Plaintiff in the present case is a fully recovered employee as determined by a USMS doctor in 1989. Plaintiff himself asserts that he is fully recovered, although he contradicts this assertion in various different pleadings. The only factual basis that Plaintiff offers in support of the allegation that he is or was disabled is his own apprehensions of re-injuring his back if he were to accept the GS–1811–11 position in Washington, D.C. If the Plaintiff felt that he could not perform the functions of the job, then he should have stated so in his several registrations on the PPRS/RPL.

Finally, Plaintiff has now withdrawn his original claim of discrimination under the disparate treatment theory. In his Motion for Summary Judgment, Plaintiff alleges a "statistical disparity between handicapped and non-handicapped individuals in employment by the Department of Justice and the U.S. Marshal Service, as well as in upgrading, promotions and other rights and benefits provided." However, in his Motion to Deny Defendant's Motion for Summary Judgment, Plaintiff states his belief that he has made a *prima facie case of discrimination against a* respondent who engaged in unlawful intentional discrimination, "not an employment practice that is unlawful because of its disparate impact." Therefore, this Court will not consider the original disparate impact claim given Plaintiff's statement.

**C. The Prima Facie Case of a Cause of Action for Reprisal**

For Plaintiff to establish a prima facie case of retaliation, Plaintiff must plead and demonstrate factual evidence of:

1. Statutorily protected expression;
2. adverse employment action against him by the employer, and
3. a causal link between the protected expression and the employer's adverse employment action.

*See Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir.1997) (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993)). Assuming as previously discussed that Plaintiff has established a prima facie case of discrimination under the ADA, the Court now examines the Plaintiff's retaliation claim. As grounds for the allegation of retaliation, Plaintiff relies upon an alleged statement made by Robert Seymore, a DOJ employee in charge of the administration of the PPRS/RPL, stating essentially that Plaintiff had been "blackballed" and that the DOJ could have offered him a job the very same day, but declined to do so because of Plaintiff's "blackballed" status. The Court assumes that Plaintiff intends to allege that this alleged "blackballed" status was the result of some statutorily protected expression to include Plaintiff's EEO complaint from 1988, and Plaintiff's various other administrative complaints and appeals.

■ While Robert Seymore denies making such a statement, its truth or veracity are to be determined by the fact finder. However, even if it were true that Mr. Seymore made such a statement, Plaintiff must show an adverse employment action. Plaintiff alleges that Defendant's failure to offer him a position is the basis for this element of the prima facie case. As previously discussed, however, the Merit Systems Protection Board, the United States Court of Appeals for the Federal Circuit, and this Court, have recognized that there have been no positions available for which Plaintiff has applied and been eligible. Consequently, Plaintiff cannot establish this element by alleging a failure to re-hire him. Furthermore, Plaintiff has not offered any direct evidence of positions available to him from 1994 to the present for which Plaintiff was eligible under the PPRS/RPL.

The Court also notes that Plaintiff has alluded to the fact that 5 U.S.C. § 7703(b)(1993) permits review by the District Court of "mixed case claims." The Court assumes that Plaintiff means to make a motion for this Court to review the final decision of the DOJ adjudication officer dismissing his agency claims of discrimination. If that is the Plaintiff's intent, then he should make such a motion, separately, with an accompanying memorandum of law in support.

Plaintiff has made a significant amount of allegations in the pleadings of this case. Unfortunately, given the doctrine of collateral estoppel, or issue preclusion, many of the issues upon which the Plaintiff now relies in asserting his discrimination claims have been decided by a court of competent jurisdiction. Those issues that have not been decided, although colorable of discrimination, are not probative, because Plaintiff has not offered a significant causal relationship between the allegations and the claims personal to himself. Consequently, in light of the standard of review for summary judgment, the Court denies the Plaintiff's Motion for Summary Judgment, and grants Defendant's Motion for Summary Judgment. However, the Court will retain jurisdiction of this matter and reserve ruling in favor of the Defendant for a period of twenty days from the date of this order in order to afford Plaintiff an opportunity to properly make a motion to this Court requesting review of the DOJ agency decision denying his discrimination claims. Accordingly, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Dkt.51) is denied without prejudice and this Court hereby retains jurisdiction of this matter for a period of twenty (20) days to allow the pro se Plaintiff an opportunity to correctly move this Court to review of the "mixed case claim." The Court defers ruling on Defendant's Motion for Summary Judgment (Dkt.49). In the event that the Plaintiff does not make any motion, the Court will enter final judgment in favor of Defendant.